**ESBER v NEW YORK LIFE INS CO et**

Ohio Common Pleas, Stark Co

No 73072. Decided November, 1937

William S. Georges, Canton, and J. A. Jeffers, Canton, for plaintiff.

Garfield, Cross, Daoust, Baldwin & Vrooman, Cleveland, for defendant.

## OPINION

By SWEITZER, J.

1. This case is before the court on plaintiff's motion for judgment on the pleadings, and on plaintiff's demurrer to the second amended cross petition. Questions similar to, if not identical with those now presented arose earlier in the case. Further study of §§9387, 9388 and 9389 GC, in connection with this motion and demurrer clarifies the mind of the court some with reference to apparent inconsistencies between different provisions of the statutes. No attempt will be made to harmonize the conclusion now reached with reference to the answer of the New York Life Insurance Company to plaintiff's petition with an earlier conclusion announced, as they are recognized by the court to be inconsistent. The difficulty encountered earlier in this particular probably arose from giving too much attention to judicial construction of the insurance statutes in cases where the facts differ from those presented here and in permitting such construction to obscure the language of the statutes themselves, in relation to the questions here presented.

2. These three statutes arise out of a legislative act appearing in 74 Ohio Laws at page 181, the purpose of the enactment of which is announced to be "For the better protection of policy holders in life insurance companies." The act should, of course, be construed in the light of its announced purpose, but in determining the extent of the "better protection" the Legislature intended to provide policy holders, the language of the statutes affords our only guide. Any possible construction placed on said statutes, in truth, does afford policy holders better protection than they had prior to the passage of the act. The original act is found helpful in construing the statutes in their present form. It is plain that §§9387 and 9388 GC relate

to policies issued prior to the passage of the act May 5, 1877; and that §9389 GC relates to policies issued since that date. §§1 and 2 of the original act relate to policies issued before May 5, 1877; and §3 of that act relates to policies issued since said date. §1 of the act provides that life insurance companies shall furnish copies of certain papers, on application of policy holders. §2 provides that failure to comply with such application for thirty days bars the issuing company from setting up as a defense, certain matter otherwise available as such. To this point the meaning of the act seems clear.

3. Section 3 of the original act now appears as §9389, GC. Originally it consisted of a single sentence. In its present form, it consists of three separate sentences The second sentence injects into §9389 GC a feature not found in §9388 GC. Sentences 1 and 3 of §9389 GC seem to correspond roughly with the provisions of §§9387 and 9388 GC, except that the later section, §9389 GC, relates to policies issued since the original act was passed, and the earlier ones, §§9387 and 9388 GC, to policies issued before the act was passed.

4. The Ohio statutes on the subject under consideration seem to be of broader scope than those of other states, examined. Ordinarily statutes of the sort seem to relate, only, to original applications for policies, and do not comprehend "each application or other document," as do the Ohio statutes. In this particular, the Ohio act protects policy holders in accordance with the announced purpose of the act, carrying that protection beyond the limits provided generally by statutes of other states.

5. Sec 9389 GC must be construed, if possible, to give effect to each of the three sentences composing it. The meaning of the first sentence seems clear and plain. It in no wise conflicts seriously with either the second or the third sentence. This first sentence seems to establish a rule of conduct for life insurance companies in certain particulars, but in no way penalizes a company issuing a policy, for failure to conform to this established rule of conduct. That subject, penalty for failure to comply with said established rule of conduct, seems to be covered by the second and third sentences of the section. It must be assumed the legislature had a purpose in inserting in the section each the second and third sentences thereof. Can reasonable meaning be attached to each

the second and third sentences, without doing violence to the section as a whole, or to the announced purpose of the act? The language of the third sentence seems clear and plain. It seems to provide a permanent bar against the use by the insurer of certain documents under certain circumstances.

6. Coming to the second · sentence, "A company which neglects so to do, so long as it is in default for such copy, shall be estopped from denying the truth of any such application or original document." The original act uses this language, "and any life insurance company neglecting so to do, shall as long as it is in default for such · copy or copies aforesaid, be estopped from denying the truth, etc."

7. Can this second sentence be given reasonable meaning without rendering the first and third sentences of the section meaningless or inconsistent? The first sentence providing the rule of conduct with reference to furnishing the policy holder the copy of the instrument in question, as observed, provides that the copy be returned "to any person taking such policy." Not to the personal representative or the heirs of the taker of the policy, or to the named beneficiaries, but to any person taking the policy.

8. In the case under consideration, the insurer contends it returned the copy of the application for reinstatement to the taker of the policy, Namer Esber, but in that connection, concedes the return was not made for 9 or 10 months after the policy was re-instated on December 1, 1934. The first sentence of the section uses this language: "Shall return with, and as part of any policy issued by it, to any person taking such policy, etc." The plaintiff concedes the policy in question has been in his possession ever since it was first issued to him. Thus the insurer was precluded from returning a copy of the application for reinstatement "with" the policy. However, it could have returned it "as part of" the policy on or about December 1, 1934.

9. Does this delay in returning the copy to the holder of the policy, which the insurer claims it has cured by said belated return, taking into consideration sentence 2 of the section, preclude the insurer from setting up the untruth of the application for re-instatement in its said answer and its said cross petition, the plaintiff conceding that demand for return of the copy in question was at no time made by him?

10. No case from any foreign jurisdiction affording assistance in the matter here presented has been found, accounted for in part, no doubt, by the fact that statutes of this nature in other states relate to original applications, only. No reported Ohio case determining the precise questions here raised, has been called to the court's attention by counsel or has been found by the court. However, in two reported Ohio cases are found suggestions on the subject. In **Dickmeier v Prudential Insurance Company**, 4 O.N.P. 13, decided about 1897. in Judge Wilson's opinion are these sentences: "That the copies referred to in §3621 GC must be delivered to the insured in his lifetime, the object being to enable him to examine them, and if mistakes are found, to have them corrected. That the object of this section would be defeated by allowing the company to deliver copies after the death of the insured. That when the company fails to deliver copies of such papers to the insured during his lifetime, and is in default for such copies at the time of his death, it is estopped from denying the truth of such representation as against the beneficiaries of the policy, and can not cure the consequences of such default by delivering copies to any person interested in the policy, after the death of the insured."

11. In Judge Hull's opinion in Andrews v National Life Insurance Company (1900) appears an extended discussion of the statute in question. However, it is of little, if any, assistance in determining the question under consideration.

12. In **Mutual Life Insurance Company v Svcnavec**, 32 Oh Ap 195 (1929) the court held that default arising out of delay in returning copy can not be cured by delivering same to some other person after the death of the policy holder, thus accepting the opinion of Judge Wilson in Andrews v National Life Insurance Company, supra, in this respect. The determination of the Svonavec case did not call for consideration of the questions here presented. The first paragraph of the syllabus of the case is: "§9389 GC, requiring insurer to return copy of application with and as part of policy issued by it to person taking policy, contemplates return of application simultaneous with delivery of policy itself, not after death of insured, thus entitling insurer to set up false representation in application as defense to action on policy." Can it be inferred from

this that the court meant to say in effect that where the insurer fails to return to the taker, the copy of the application at the precise moment the policy is returned, the default resulting therefrom, can not be cured by returning the copy to the taker of the policy at a later date during the life-time of the taker? As observed earlier, the first sentence of the statute under consideration directs the return of the copy simultaneous with the policy, but as earlier observed also not all failures to comply with the rule of conduct are penalized.

13. It is not believed the court deciding the Svcnavec case meant to express any opinion on the question here under consideration. This court concludes that the only reported Ohio case wherein an opinion is expressed on the subject here considered, that being in the nature of an obiter, is Dickmeier v Prudential Life Insurance Company, supra. It is believed, too, that expressed opinion is in conformity with the language of §9389 GC and with the purpose assigned by the General Assembly in passing the original act. It may be that better protection than is afforded policy takers by the construction placed on the statute by Judge Wilson is desirable. If so, same should be brought about by the General Assembly. Certainly it is not in the province of the courts to extend the protection referred to beyond the reasonable meaning of the statute.

14. Under the pleadings as they now stand it is believed that plaintiff's motion for judgment should be denied as the pleadings present a disputed question. Accordingly the motion is denied. Further the court being of opinion defendant, The New York Life Insurance Company is entitled to plead as a defense to the petition in connection with its claim that it has returned to the plaintiff a copy of the application in question, the untruth of the application for re-instatement, leave is granted said defendant to file an amended answer to the petition within ten days.

15. Plaintiff's demurrer to the cross petition of defendant, The New York Life Insurance Company, is overruled.

16. Counsel for defendant, The New York Life Insurance Company, may prepare and submit for approval an entry conforming to this memorandum.