**STATE OF OHIO, Plaintiff-Appellee v. MILES, Defendant-Appellant.**

Ohio Appeals, Second District, Darke County.

No. 613.   Decided December 8, 1943.

4

Richard E. Hole, Prosecuting Attorney, Greenville; Sam Kelly, Special Counsel for State, Dayton, for plaintiff-appellee.

E. A. Myers, Celina; R. D. Touvelle, Columbus, for defendant-appellant.

## OPINION

By BARNES, P. J.

The above entitled cause is now being determined as an error proceeding by reason of defendant's appeal from the judgment of the Court of Common Pleas of Darke County, Ohio.

Defendant's notice of appeal was erroneously designated as an appeal on law and fact. We find many able lawyers who still have a misunderstanding as to what is meant by an appeal on law and fact. Briefly, it means a chancery or de novo appeal, while an appeal on law is in reality an error proceeding. §12223-1 GC.

Of course a criminal action can never be a chancery proceeding, and hence an appeal must always be on question of law.

Counsel for appellant had no intention of any other form of appeal than "At Law", for the reason that every subsequent step was in conformity to an error proceeding. In other words, the necessary steps were taken for having allowed a bill of exceptions, and thereafter all papers, together with docket and journal entries, were filed in our Court and in due time an assignment of errors, together with brief.

We, therefore, of our own motion amend the notice of appeal so as to read "Appeal on Question of Law."

Defendant-appellant was the Probate Judge of Darke County, Ohio, having served in that capacity since 1925. On or about December 2, 1942, he was indicted by the Grand Jury of said Darke County of the crime of soliciting a bribe as defined under §12823 GC. At the same time a second indictment was returned, charging the crime of extortion as defined under §12916 GC.

The specifications set out in the two indictments were practically the same, except a possible slight variance in dates. Indictment 5407, charging bribery, set out date as between October 20, 1941, and October 23, 1942, and under the indictment charging extortion, being 5406, the date was stipulated as July, 1942 and before. On arraignment defendant entered a plea of not guilty and both cases were assigned for trial. At least one assignment date was fixed and the cases reassigned for the reason that there was not sufficient time to dispose of certain preliminary questions.

The local Common Pleas Judge received defendant's plea of not guilty and fixed the original date for hearing. Thereafter, Judge Cameron of Marysville, Ohio, was regularly and duly assigned by the Chief Justice of the Supreme Court to preside in the trial of these two cases. Apparently, both the indictments were attacked by motion to quash and through demurrer. Apparently, first attention was given to indictment 5406, charging extortion. Counsel for appellant make the statement, and it is not denied, that the Prosecuting Attorney had

made the oral statement that he expected to try the extortion case first, and presumably it was regularly assigned for trial on January 25th. On or about January 14th, 1943, the Prosecuting Attorney filed a motion to consolidate the two cases for· the claimed reason that the crimes arose out of the same set of facts and that the same evidentiary matter would be used in the trial of both causes. This motion was made pursuant to §13437-3 GC. Copy of the motion and notice were served on defendant's counsel the following day.

When the case came on for trial on January 25th, some preliminary questions remained undisposed of, and the forenoon was taken up with further arguments and disposition of all preliminary questions. Defendant's motion to quash, as well as his demurrer, were overruled on the announced reasoning and authority set out in the Court's written opinion overruling a similar motion and a demurrer in case No. 5706. The motion for consolidation was argued. Thereafter the same was granted for the reason that the factual questions in the two cases were identical, the only distinction being that the bribery charge was a felony, and the extortion charge was a misdemeanor. Counsel for· defendant urged they were then in court expecting to defend on the extortion indictment, and that it would be unfair to bring him to trial on the bribery charge which would be the result of a consolidation. Through examination of the indictments and interrogation of the Prosecutor, the trial court was assured that the evidence would be identical in either case and hence the defendant could not be prejudiced through the consolidation. Thereafter, counsel for defendant demanded a bill of particulars. Apparently, a similar motion had been made in case No. 5406, and therein the Prosecutor presented to the defendant or his counsel copies of all letters which were stated to be the sum of all documentary evidence, except papers and records from the Probate Court. When the motion for a bill of particulars was made in case No. 5407 the trial court ascertained that the copies of letters had been delivered to the defendant or his counsel and inquired of counsel if there was any objection to the informal method of complying with the request for such bill of particulars. The trial court used meticulous care in considering this question and at some length obtained the assurance from the Prosecutor that no other or further documentary evidence was expected or would be used beyond the copies already in the hands of the defendant, with the possible exception of papers or records from the office of the Probate

Judge. Counsel for the defendant readily conceded that their request was not intended to include any public records. At this same session, on the morning of January 25th, the Court sustained motion for amending the indictment by striking. These matters are of no importance and are not the predicate of any claimed error. Also, at this same time, the trial court on motion of the Prosecuting Attorney, appointed Sam Kelley of Dayton, Ohio, to assist in the prosecution of said cause.

The trial of the case consumed some two weeks. The Bill contains 1220 pages plus numerous exhibits. 400 pages cover the voir dire examination of jurors. We think this is a record, as we cannot recall any other case which we have reviewed where jurors were examined so extensively and so fully as in the instant case. The taking of evidence did not start until the afternoon of January 28th. Following the taking of evidence, the argument of counsel, and the charge of the court, the jury retired for deliberation, and, after about six hours returned into court with a verdict of guilty. Motion for new trial was duly filed, overruled and sentence imposed. In due time notice of appeal was given and thereby the cause lodged in our court.

Defendant's assignments of errors consist of 23 separately stated and numbered specifications. However, many of these are not taken up separately and discussed and hence, in the interest of saving space, we will not set out in this opinion the assignments of error in their entirety. Counsel, however, in their brief, do make a general discussion which is covered by some of the assignments and to which we will give attention.

Counsel in their brief make the broad and sweeping claim that every step of the proceedings presents prejudicial error and ground for reversal. Under this broad claim are included claimed errors in the assignment of the indictments for trial; error in selection of the jury; misconduct of the Prosecuting Attorney in the opening statement; error during the trial; error in the charge of the court, and misconduct of the jury prior to and after the submission of the case to them. Counsel recognizes that some of the errors complained of ordinarily would not justify a reversal, but argues that all of the errors considered together amount to a deprivation of a fair and impartial trial. The first matter taken up is the consolidation of the two cases which has heretofore been set out in detail. It is urged in the brief that through this action in the trial court counsel for defendant were required "over night"

to challenge the second indictment by motions and demurrer which were hastily prepared and hastily considered by the court. This claimed error can only be of importance if after the lapse of time and full consideration counsel are able to now point out that either the indictment was subject to motion to quash or demurrer or any other proper plea that defendant was prevented from making. Counsel do not now argue that either the motion to quash or the demurrer should have been sustained; nor does the record present the claim that some other plea might have been desired.

The further question was urged that during the voir dire examination of the jurors and after several had been interrogated and passed for cause the Assistant Prosecutor moved the Court to dismiss the indictment for extortion and that the case proceed upon the indictment for bribery. This motion was made in conformity to provisions of §13437-31 GC. This section, in substance, provides that if there be pending against the same defendant two or more indictments for the same criminal act, the Prosecuting Attorney must elect upon which he will proceed and upon trial being had upon one, the remaining indictments shall be quashed. The trial court sustained the motion. We find no prejudicial error in this ruling. Counsel for defendant seeks to illustrate that there were substantial differences in the two indictments, but the only specification that was pointed out is a claimed variance in the date. In the indictment for bribery the date is set out as follows: "on or about the period between October 20, 1941 and October 23, 1942", whereas in the indictment charging extortion the date is set out as follows: "on or about the 8th day of July in the year of our Lord One Thousand Nine Hundred and forty-two and prior thereto". We approach this question having in mind that under the law the time stated in the indictment is not material. This, in connection with the Prosecutor's statement that they were relying upon the same evidence in both cases, would clearly bring the cases within the provision of §13437-31 GC. We find no error under this claim.

Counsel for defendant further argue that under one indictment it is charged that defendant committed the act of extortion from J. Ed. Williams, T. A. Billingsley and Joseph E. Menke, on July 8, 1942, after J. Ed. Williams was dead. (Williams died June 26, 1942), whereas the bribery indictment charged solicitation of a bribe from these three men over a period of a year during the lifetime of Ed. Williams, and for a period of four months after his death. Again, we find that

counsel is in error in the statement as to dates, and what the Court said in discussing this question above is applicable here.

Further along, on the question of forcing defendant to go to trial on the charge of bribery, argument is made that under this indictment a felony was charged, whereas under der the extortion indictment only a misdemeanor was charged, and that defendant prepared himself for trial on the indictment charging a misdemeanor. We have heretofore recited in detail just what took place through the consolidation of the two indictments. While counsel at the time the matter was being argued did urge that it would be unfair to put the defendant on trial on the bribery charge, yet he did not, after the court had sustained the motion to consolidate, make any request for a continuance. We think such a request would be essential and in the absence of such we find no prejudicial error. Even if such a request had been made we would still be presented with the question as to whether or not the trial court abused its discretion in the light of its conclusion and finding that the indictment for bribery presented the identical factual questions as did the indictment for extortion.

Complaint is also made that at the time the trial court was dealing with the request for a bill of particulars it gave the assurance that counsel for defendant could rely on the fact that the bribery indictment charged solicitation of a bribe from the three parties jointly, whereas the trial court charged the jury that the defendant should be found guilty if they found that he had solicited a bribe from any one of the parties named. We do not think that the record bears counsel's interpretation as to what the court said, but even so it would not bar the Court from changing his mind and giving a correct charge to the jury. We have no hesitation in saying that under the law it was not incumbent upon the state to prove that the solicitation was joint, regardless of the nature of the indictment.

Counsel for defendant further argue that at the time of passing on the demurrer they urged that the same was bad for duplicity. As we understand, this refers to the statement of soliciting a bribe from the three individuals named. We have no difficulty in determining that this claimed error is not well taken.

Counsel for appellant makes the further complaint that through the statement of counsel for the State and also in the evidence, the Court, over the objection of defendant, per-

mitted the claim that Ed Williams and Joseph E. Menke who had been administrators of the Marker estate and their attorney, T. A. Billingsley, were guilty of misconduct in the administration of the estate. As we view it, counsel for the state were presenting a chronological history of what had transpired in the Marker estate, in order to acquaint the jury with the background leading up to the contemplated application for extraordinary fees for the administrators and their attorney, and the numerous letters written by the defendant relative thereto as bearing on the question of the intent with which such letters were written.

We are unable to find that the Court extended the scope of the evidence beyond the issues raised under the indictment, or unduly limited the defendant in his presentation of proof. As far as the evidence of the allowance of fees to the administrators and their attorneys back in 1934, it was also shown that the allowance of these fees was litigated and were sustained by the Common Pleas Court and the Court of Appeals.

We do not find that the trial court in any instance made statements prejudicial to the rights of the defendant. It is our conclusion that the trial court was very careful and resolved all doubts in favor of the defendant.

This brings us to that point in appellant's brief where they quote their assignments of error and discuss them by number. The only assignments so discussed are Nos. 4, 13, 15, 14, 17, 19 and 22.

Before taking up these assignments we think it well to present some of the substantive facts in connection with the indictment so as to render understandable the exact question being tried.

First, the indictment, omitting the formal parts, reads as follows:

"Do find and present that one Harry E. Miles, late of said county, on and before the 20th day of October in the year of our Lord one thousand nine hundred and forty-one, at the county of Darke aforesaid, was the Judge of the Probate Court of Darke County, Ohio, in the aforesaid county, duly and legally appointed, elected, qualified and sworn to discharge and perform the duties of said office; and that said Harry E. Miles, while being said judge, and on or about the period between October 20, 1941, and October 23, 1942, did, in the county aforesaid, unlawfully, fraudulently and corruptly as such judge aforesaid, solicit a certain sum of money, towit, fifteen hun-

dred dollars from Joseph E. Menke, J. Ed. Williams, now deceased, and T. A. Billingsley, with intent to influence him, the said Harry E. Miles, judge aforesaid, in the discharge of his official duties in favor of said Joseph E. Menke, J. Ed. Williams, now deceased, and T. A. Billingsley with respect to the allowance of extraordinary compensation to said Joseph E. Menke and J. Ed. Williams, now deceased, as co-administrators de bonus non of the estate of V. S. Marker, deceased, being case No. 12597 on the docket of the Probate Court of Darke County, Ohio, and with respect to the application for the allowance of extraordinary compensation to T. A. Billingsley, attorney for the aforesaid co-administrators of the aforesaid estate, which application was then pending before Harry E. Miles as said Judge, contrary to the statute", etc., etc.

The pertinent part of §12823 GC, under which the indictment was drawn, reads as follows:

"* * * and whoever being a * * * state or other officer * * * either before or after his election, qualification or employment, solicits * * * any valuable or beneficial thing to influence him with respect to his official duty, or to influence his action, vote, opinion or judgment, in a matter pending, or that might legally come before him, shall be imprisoned in the penitentiary not less than one year nor more than ten years."

The substantive evidence claimed to substantiate the indictment was in the main several letters admittedly written and mailed by the defendant, Miles. These letters are identified as Plaintiff's Exhibits 10, 11, 12, 13, 14 and 15. The envelopes in which the several letters were mailed are also attached as exhibits and each has the same number as the corresponding letter and in each instance is identified with the same number to which is added "-1". For instance, "10-1". All of these letters from one to fourteen were admittedly written by the defendant, Judge Miles, and mailed to Mr. J. Ed. Williams, Cashier, People's Savings Bank, Greenville, Ohio. During all this time Mr. J. Ed. Williams was sick, and during the greater portion of the time was confined to his home. He died June 26, 1942.

Exhibit No. 15 was addressed to Mr. Joseph Menke, Cashier, Farmers' National Bank, Greenville, Ohio. The envelope in which this letter was addressed was erroneously designated,

"Mr. Joseph Menke, Cashier, Peoples' Savings Bank, Greenville, Ohio." The letter went to the Peoples' Savings Bank instead of the Farmers' National Bank. Mr. H. E. Monroe, Cashier of The People's Savings Bank, opened the letter, and after reading made a copy of same, then replaced it in the original envelope, wrote across the front, "Opened in error, H. E. Monroe, The People's Savings Bank, Greenville, Ohio." Then it went on to Mr. Menke. The copy of this letter was by some one presented to the Prosecuting Attorney and thereafter started the investigation through which similar letters addressed to Mr. Williams were discovered and the indictment followed.

These letters, very incriminating in their nature, were practically the only evidence bearing on the commission of the offense. So far as ascertained no replies were made by Mr. Williams or Mr. Menke. The only evidence of any oral conversations between the defendant and the administrators or their attorneys, or between each other were the statements made by the defendant Miles in his letters. In other words, take out the letters and there is nothing left.

The letters to Mr. Williams, Exhibits 10 to 14, inclusive, were found among his private papers after his death. To include verbatim copies of the letters in this opinion would add too much to what is already a very lengthy opinion. We will copy two, Exhibit 10 and Exhibit 15, and make slight reference to the others. State's Exhibit 10 reads as follows:

"Greenville, Ohio, October 20, 1941.
Mr. J. Ed. Williams, Cashier,
Peoples Savings Bank,
Greenville, Ohio.
My dear Friend Ed:—

Mr. Joe Menke was talking with me a few days ago and I was supposed to have talked with you personally regards the Marker estate and to see what I might be able to do towards paying off my debt at your bank, which has been dragging along for the past few years and also as to an obligation that I owe to Mr. Menke's Bank.

He has consented that he will file application for additional fee and include for a sum large enough to take up that obligation at his bank and can you do the same thing with what I owe you.

Mr. Porter approached me a couple of months ago and he suggested that a policy like that be done wherein he wanted me to send persons to him who needed an attorney and he would apply half of what fees he received against my debts.

Kindly let me know if such is what you and Mr. Menke desire and if I can then have my obligation so closed with you.

Thanking you for reply I remain,

Very truly yours

(Signed) Harry E. Miles.

No doubt Mr. Menke has talked with you about this, and just he, you and I are the only ones who know about this, so he suggested that I have you destroy correspondence on it."

Exhibit No. 11 is a letter dated October 29, 1941, and is of the same general import, except it starts out with a paragraph that, Mr. T. A. Billingsley was talking with him, but it all relates to the plan through which he could procure the money to pay his obligations.

Exhibit No. 12, dated January 12, 1942, appears to be a joint letter to J. Ed. Williams and Joseph Menke. Only the one letter is introduced in evidence and that is the one addressed to Mr. J. Ed. Williams. Mr. Menke denied having received duplicate. This goes into somewhat more detail as to his financial obligations and imploring the administrators to see him and quickly make the arrangements through which he can pay off his obligations and particularly the one owing to a Mr. Moore. The letter states that unless some arrangements can be made and done quickly he will have to file a petition in bankruptcy.

State's Exhibit No. 13, dated January 19, 1942, refers to a purported conversation that the writer had had with Mr. T. A. Billingsley indicating that the arrangements had been completed with Mr. Menke, but that they wanted a confirmation or like agreement with Mr. Williams and requesting that he see them or write them.

Plaintiff's Exhibit No. 14 was dated February 5, 1942. It starts out with the statement that he is writing at the suggestion of Mr. Joe Menke and Mr. T. A. Billingsley. The letter makes reference to a claimed understanding that the bank loan which he desires is to be taken care of from the extra administrators' fees in the V. S. Marker estate. He asks for a confirmation by letter. A postscript refers to the contemplated application of the administrators and their attorney for extraordinary compensation out of the V. S. Marker estate, due primarily to extra obligations incurred by the administrators through the court's making a charge against them for interest totalling over $9000.00.

State's Exhibit No. 15, being a letter to Mr. Jos. Menke, reads as follows:

"Greenville, Ohio, July 8, 1942.
Mr. Joseph Menke, Cashier,
Farmers National Bank,
Greenville, Ohio.
Dear Sir:

Referring to my former letters to you and the statements made to me by Mr. T. A. Billingsley, regards the $1500.00 you may consider that the same will be applied or I will agree for it to be applied as follows,

First, to Will Moore on his note of $700.00 plus the interest which will amount to nearly $750.

Second, you may then apply the next on your note plus interest in full amount due you.

Third, then I will pay on the note at the Peoples State Bank and whatever balance remains still due, I will pay it myself; however what I owe you will be paid first and I will owe them instead of your bank.

Trusting this will meet with your approval and that you will kindly take care of Mr. Moore at once for there is seldom a day but what he does not drive over to my home and he has stated the last few days that if this is not paid shortly that he is going to be forced to file action and I cannot allow him to do that and so please please please try to take care of at least his note for me as I can hardly sleep at nights and my nerves are getting bad and I have to take medicine and I must either tell him to go ahead and file suit or I must go to Dayton and be forced to file an application in bankruptcy or I must file an entry in this office in the Marker estate setting aside the two allowance of 'fees' to you and Mr. Williams and Billingsley and certifying it to the Court of Common Pleas on the ground that I am a material witness and because I am biased, etc., which I am sure that neither you nor Billingsley would want me to do and of course I don't want to myself but Mr. Moore demands his money and insists on it at once.

Please—please—please take care of him and you can make the check direct to him if you prefer.

(Signed) Harry E. Miles."

On or about April 1, 1942, Mr. T. A. Billingsley as attorney for Williams and Menke, Administrators de bonis non of the Marke estate, filed applications in the Probate Court for extraordinary compensation as such executors, stating that during the period since the filing of the last account there had been much litigation and that they were being contacted al-

most daily by creditors and other interested parties and that a finding had been made against them charging them interest on a cash balance in their account far in excess of the compensation previously received by them. At the same time Mr. Billingsley filed his application for additional compensation as attorney for the administrators, setting out the nature and character of his work since the last allowance was made. Neither application made any statement as to the amount to be allowed. Sometime in May, Mr. Billingsley went to the Probate Court with prepared entries as to the allowances, except that the amounts were left blank. When he took the matter up with Mr. Miles, Mr. Miles handed him a written opinion in which the amount of the allowances was set out. $4300.00 was allowed to the administrators and $6600.00, to Mr. Billingsley as attorney. Mr. Billingsley testified that he had agreed with the administrators that whatever was allowed to him as attorney's fees, or so much thereof as was necessary would be turned over to the administrators, which amount, together with their extra compensation, would wipe out the interest charge of some $9500.00. As explanation for his generous offer, he stated that he had advised the administrators that they were not chargeable with interest and he felt that he was in a measure to blame for their failure to invest the funds. Very shortly after the allowances were made the administrators made distribution to themselves of the $4300.00 and gave to Mr. Billingsley a check for $5500.00 which two amounts were immediately turned back into the estate again and intended as settlement of the interest charge. At a subsequent date, Mr. Billingsley filed an entry setting aside the allowances made to the administrators and to himself as attorney. He stated that his reason for so doing was that the original action in bringing the matters up for allowance was at the urgent request of Mr. Williams who was very seriously sick and was demanding that the matter be carried through so that the principal of the interest charge would be settled while he was still living. Billingsley further stated that this was against his advice as he felt that the matter of the allowances should come up at the time of filing the account, and that that is his present intention.

From the quoted letters, State's Exhibits Nos. 10 and 15, and the others referred to only by exhibit number, it at once appears that a very strong case is presented by the state against the defendant. He admitted writing the letters and sending them through the mail. Categorically he denied that

he had any intention of wrongfully procuring any money from the Marker estate or from anybody else. He further testified that he was worried and that he just did not know why he wrote the letters; made detailed denials of ever having had any conversation with either of the administrators or Mr. Billingsley, their attorney, relative to any matter suggested or set out in the various letters.

The defendant called as witnesses quite a procession of reputable citizens of Greenville, all of whom testified to the good reputation of Judge Miles for honesty and integrity. From the record as a whole there can be no doubt that it supports the jury's verdict of guilty. We would have no alternative than to sustain the judgment of the trial court, unless, perchance, some of the errors complained of are of such character as to require a new trial.

We will now take up the assignments of error separately discussed.

### "No. 4. Error on the Part of the Court in the Selection and Impaneling of the Jury."

The specific thing complained of by counsel for defendant was that the court permitted the Prosecuting Attorney or his Assistant to submit to the jury what is designated as hypothetical questions. The claim is made and supported by the record that this method was pursued with every prospective juror interrogated. The questions were not always the same, but the same in substance. Counsel for defendant sets out in his brief what he claims are some of the most flagrant instances of this method of interrogation. Selecting at random one of the interrogations we find the Prosecutor very generally made inquiries in substance as follows:

"Now upon the subject of reasonable doubt, the Court will give you as a matter of law the definition of reasonable doubt, and if the Court tells you that it is an honest and substantial doubt, but it isn't a doubt that is a conjecture of a fact or the doing of an unlawful duty, would you follow that instruction?"

Also,

"Now, the indictment in this case charges that this defendant, Harry E. Miles, solicited a bribe of some $1500.00 from

the then administrators of the V. S. Marker estate, one Ed. Williams, now deceased, and Joe Menke, and also from their attorney, Mr. Billingsley. Another bit of law that would be applicable to this case is this: that under the law it is just as much an offense to solicit a bribe as it is to receive it.

Now could you follow that instruction if given to you by the Court?"

Also,

"Now in this case the burden is upon the state to prove guilt beyond a reasonable doubt. Judge Cameron will chaige you as to what is reasonable doubt. He will say to you that it is not an imaginary doubt; that all matters pertaining to human affairs are subject to some imaginary doubts; it is not that kind of a doubt. It is that state of the case where you consider all the evidence and cannot say that you feel an abiding conviction of guilt to a moral certainty. Would you follow such an instruction?"

Also,

"The Court will instruct you that the penalty, if any, that might be imposed, if a verdict of guilty might be returned is a matter solely for the consideration of the Court; in other words, the Court passes sentence after a verdict of guilty is returned, if such a verdict is returned. Now, in consideration of the facts in this case will you remove and free your minds of any consideration of what sentence or penalty might be imposed upon the defendant?"

It is argued that the Supreme Court in the case of the **State of Ohio v Huffman, 86 Oh St 229,** places a ban upon the asking of hypothetical questions. A careful reading of the Huffman case will readily distinguish it from the instant case. The particular form of inquiry that the Supreme Court found improper was the type of hypothetical question where the evident purpose was to have the jurors indicate in advance what their decision would be under a certain state of evidence or upon a certain state of facts. That is not at all the situation in the instant case. The inquiry was simply asking the jury if they would follow the law. The inquiry did state what was claimed to be the law on certain questions that are always present in a criminal action. How far the Prosecutor

may go in stating principles of law to the jury is a matter within the sound discretion of the Court. We are unable to find that any principle of law mentioned by the Prosecutor was in any sense incorrect, nor do counsel for appellant make any such claim.

The Court of Appeals of the Seventh District in the case of **State v Wald, 25 Abs 319,** pointed out the proper construction to be given to the decision of the Supreme Court in the Huffman case.

We find no error under Assignment No. 4.

The next assignments of error presented by appellant were assignments Nos. 13 and 15, which read as follows:

"**13. Error on the Part of the Court in Overruling the Motion made by the Defendant for a Directed Verdict at the Close of the Testimony Offered by the State.**

"**15. Error on the Part of the Court in Overruling a Motion by the Defendant for a Directed Verdict at the Close of All the Testimony.**"

If we understand counsel for appellant correctly, they make the argument under these assignments that the indictment makes the charge of soliciting a bribe from three persons, to-wit, J. Ed. Williams, Joseph Menke and T. A. Billingsley, and that it is essential to a conviction that the evidence connect all three of these named persons as being involved in the claimed solicitation. We are unable to agree with this proposition of law, but even if it were a correct statement the record does present evidence through the letters admittedly written by the defendant that he had contacted each and all of the three persons named for the purpose of formulating a plan through which he would receive $1500.00 or thereabouts in return for his making a judicial order awarding administrators' fees and attorney's fees in the Marker estate.

The Court charged the jury, and we think correctly so, that the solicitation of either one of the three was sufficient.

It is further argued by counsel for defendant that there is no evidence that J. Edward Williams ever read the letters admittedly written and addressed to him by the defendant Miles. As heretofore stated, the letters, Exhibit 10 to 14, inclusive, all addressed to J. Ed. Williams, were discovered in a box where Mr. Williams kept his private papers, following his death. Mr. Williams' son-in-law, who was one of his adminis-

trators, testified that the box was a tin box, such as is customarily used for keeping private papers and was kept by Mr. Williams at the foot of his bed. It is quite true that no witness was interrogated as to whether or not the letters were opened or still sealed at the time they were found by the administrator of Mr. Williams. This probably was an oversight on the part of the prosecution. Following Mr. Williams' death the family went through his box to discover what papers were therein and Mrs. Williams, who was then living, took charge of the letters and they were in her possession until her death. The letters were finally turned over by Mr. Williams' adminstrator to his attorney, George Porter. We would assume from this that Mr. Porter turned them over to the Prosecutor, although there is no direct testimony on the subject.

Returning to the argument that there is no evidence that these letters were ever opened or read by Mr. Williams, we think that when the proof in connection therewith is all considered, the jury would be warranted in concluding that Mr. Williams acted as the normal individual, and would open his mail and read the contents of the letters before filing in his private box kept at the foot of his bed, with other private papers. Over and beyond this there was positive evidence that the letter, Exhibit 15, under date of July 8th, addressed to Mr. Joseph Menke, was received and read by Mr. Menke, and this letter even standing alone would be sufficient to present the question of fact of soliciting a bribe.

We find no merit under assignments Nos. 13 and 15.

**"14. Error on the part of the Court in Permitting the State of Ohio to Reopen this Case and offer certain Evidence ▇▇▇ to lay a foundation for the Impeachment of a Witness to which the Defendant Duly Objected and Excepted."**

After the state had closed its evidence and the defense was presenting its evidence, Mr. Joseph Menke was called as a witness on behalf of the defendant. During the course of the cross-examination of Mr. Menke the Prosecutor asked the following question:

"Well did you tell George Porter that you promised to pay Miles this $1500.00?"

Mr. Menke answered, "I did not." After the defense had rested and the state was introducing its rebuttal, George

Porter was called to the stand, and he was inquired of whether or not Mr. Menke had said to him that he had promised to pay Miles this $1500.00. There was an objection to the question and the Court sustained it on the ground that it was impeaching in character and that the proper and necessary preliminary question had not been put to Mr. Menke, in that no time and place had been mentioned. Thereupon the Prosecutor requested permission of the Court to recall Mr. Menke for further cross-examination and this request the Court granted. Mr. Menke when recalled was asked concerning a certain conversation at a certain time and place and the foundation was properly laid. He denied that he had had any such conversation with Mr. Porter. Mr. Porter was then returned to the witness stand and was interrogated. He refused to answer the questions supposedly on the theory that he at some time was associated with other counsel in representing the administrators in the Marker estate. The Court ruled that he should answer and his answer was "Yes". This presents a very troublesome and close question. Counsel for appellant cite the following authorities:

Rustin v Prudential Insurance Co., 27 Oh Ap 466; Sabo v State, 119 Oh St 231.

The State in their brief cite the following:

Section 13442-8, subsection 4, GC.; Adams v State, 25 Oh St 584; Holt v State, 107 Oh St 307; Young v State, 12 Abs 679; Taylor v State, 12 C. C. (N. S.) 486; State v Rhodes, 15 N. P. (N. S.) 117.

We have given careful consideration to the authorities cited and particularly to the applicable section of the Code. We discover that all of the cases cited were decided prior to the amendment of **Par. 4 of §13442-8 GC**. This situation at once renders inapplicable all the decisions cited except as the reasoning therein may be helpful in construing Par. 4 as it now reads. As far as we are able to find no court in Ohio in any reported case has construed Par. 4 since the amendment in 1929. Ohio Laws, 113, p. 123. Prior to 1929 Par. 4 read as follows:

"4. The state will then be confined to rebutting evidence, unless the court for good reason, in furtherance of justice, shall permit it to offer evidence in chief."

The above language was first included in the criminal code of procedure in 1866. (Vol. 66 O. L. p. 309, §151.) The language remained the same until the amendment of 1929. This paragraph 4 now reads as follows:

"4. The state will then be confined to rebutting evidence, but the court, for good reason, in furtherance of justice, may permit evidence to be offered by either side out of its order."

It is interesting to note that the prescribed rule in civil procedure was very similar in its nature to original paragraph 4, and the same has never been changed.

It necessarily follows that the amendment of 1929 had a purpose. It is urged by counsel for the appellant that the Court violated the rule prescribed under the section by permitting the state to open up defendant's case for further cross-examination of one of defendant's witnesses. Under the section as it existed before the amendments and in the light of the authorities cited, this would probably constitute prejudicial .error, but under Par. 4 as it now reads, the order of presentation of evidence is largely in the discretion of the trial court, limited, however, by the condition that the variance from the prescribed order must be "for good reason, in furtherance of justice".

It is evident that the trial court permitted the recall of witness Menke for further cross-examination for the reason that originally they had failed to designate time and place as an essential requisite to the introduction of impeaching testimony. In a measure this is a somewhat technical rule, but nevertheless substantive. In our judgment the trial court was within his right in permitting the recall of witness Menke for further cross-examination, so as to definitely lay the ground for the impeaching testimony offered through witness George Porter.

We find no error under assignment No. 14.

"17. Errors in the Court's General Charge to the Jury."

Counsel in their brief seem to agree that counsel for the state requested the trial court to present his charge in writing. We do not believe that the bill of exceptions discloses this request. Since it is conceded that the request was made, it becomes unimportant as to what may or may not be disclosed in the bill of exceptions. The first complaint is that the trial court in its general charge failed and neglected to say anything covering the law as to the use of character witnesses.

In the trial of the case the defendant presented a procession of witnesses, all of whom testified to the previous good character of the defendant. Many of these persons were well known and highly respected citizens of the county. We doubt if any criminal case in any jurisdiction has ever been presented where witnesses in such number appeared and vouched for the good character and reputation of the defendant as was done in the instant case. At the close of the charge, counsel for defendant called the Court's attention to his failure to charge on the question of character and reputation and at the same time submitted in writing a further charge on this question. The Court gave it to the jury as requested. Under this situation it is obvious that complaint cannot be made because the Court failed to include it in his original written charge. In any event, we would consider it an act of omission rather than commission and under the well recognized rule would under no circumstances be prejudicial error.

A second complaint in the charge is that the trial court failed to make any reference to the word "corrupt" as used in the statute defining bribery. It is quite true that the trial court did not make specific reference or use of the word "corrupt" in connection with the criminal charge under the indictment. A careful reading of §12823 GC, will disclose that the section sets out four separate specifications of criminal infractions, first, "Whoever corruptly gives," etc., * * * "to an officer any valuable thing"; second, "corruptly offers or promises to do an act beneficial to such officer to influence him with his official duty"; third, "whoever * * * being an officer either before or after his election," etc., "solicits any valuable or beneficial thing to influence him with respect to his official duty", etc., and, fourth, "whoever solicits any valuable or beneficial thing for the purpose of influencing his action, vote, opinion or judgment in a matter pending or that might legally come before him shall be imprisoned", etc. Under the language of the section we do not think that it is necessary for the court to use the word "corrupt" in his definition of the crime charged in the indictment. The Court did explain very clearly that the defendant was charged with soliciting a bribe for the purpose of influencing his conduct and orders in a matter then pending or that might be pending before him as Probate Judge. This is exactly what is stated

in the cited case in **State of Ohio v Davis, 90 Oh St 100,** first syllabus:

"Where an indictment charges the solicitation of a bribe, it is necessary for the state to plead and prove the specific corrupt intent required by the statute, to-wit, 'to influence him with respect to his official duty, action, vote,' etc."

Counsel for appellant at the close of the general charge made the request that the court charge the jury in the language set out in the first syllabus above quoted in the case of State v Davis, supra. In our judgment the trial court, while not in the exact language, but in substance, had adequately and properly charged the principle announced in the Davis case, supra. The trial court further dictated into the record at page 1187 that the request was not presented in writing. Obviously, the trial court was seeking to comply with the statutory requirement, where a written charge is requested and given, that the same shall not be orally modified, etc.

Counsel for appellant further complain that the trial court placed special emphasis on certain parts of the evidence. This complaint refers to what the trial court said to the jury relative to certain exhibits, being the letters written by defendant and introduced in evidence as Exhibits 10, 11, 12, 13, 14 and 15. The specific language objected to is as follows:

"The charge against the defendant, Harry E. Miles, in this trial is based primarily upon certain letters which have been introduced in evidence and marked as exhibits in this case, and which the defendant, Harry E. Miles, has admitted were written and signed by himself. You will have these letters with you in your jury room and should examine them carefully to determine the purpose and intent with which they were written. However, in making this examination and in determining the intent and purpose of their being written, you should give full and complete consideration to all of the other evidence introduced at the trial, whether written or oral, and to each and every part thereof."

It is argued that this paragraph in the Court's charge placed special emphasis on the letters presented as state's ex-

hibits. We recognize the rule of law that it is error for the trial court to pick out and give special emphasis to certain parts of the testimony which might lead the jury to conclude that the Court considered the particular evidence mentioned determinative of the controversy. A number of cases are cited and we have no quarrel with any of them. It is our conclusion that the paragraph in the Court's charge does not offend in the particulars claimed, but on the other hand we think that the Court was endeavoring to and did direct the jury to consider any and all other evidence rather than to be limited to the letters introduced in evidence as exhibits. Under the evidence in the instant case it would not be at all unnatural for the jury to at once say that the letters were the sum and substance of the entire case and nothing else was of any importance. The Court met this anticipated situation by his very apt language in the paragraph cited.

We find no error in this particular.

Assignment of error No. 19 complains of misconduct on the part of the jury. This ground of error was first presented to the Court on the motion for new trial. Complaint was made that three jurors, naming them, were threatened by two other jurors, naming them, and that the unanimous verdict of guilty was brought about through such misconduct. Affidavits of the three jurors were offered in support of the contention. The trial court ruled that such testimony could not be received unless misconduct aliunde be first offered.

Counsel for appellant recognized this principle of law and sought to obviate its provisions by introducing an affidavit aliunde of claimed misconduct of one of the alleged threatening jurors in another particular. The trial court determined and we think correctly so, that this affidavit presented a question wholly unconnected with the claimed threat. The trial court did consider the affidavit of Mrs. Howell in which she makes the statement that one of the jurors, Mrs. Pierce, during the progress of the trial and before submission of the case to the jury, discussed evidence which had been offered and expressed an opinion that the defendant was guilty.

Mrs. Pierce categorically denied every substantive fact contained in the affidavit of Mrs. Howell, and further stated that it was Mrs. Howell who was guilty of misconduct in that she, Mrs. Howell, sought to discuss the case with Mrs. Pierce. Mrs. Pierce states that she considered the conduct improper and thereafter refrained from riding together to

their respective homes, as was their custom prior to the claimed incident. This was a matter wholly within the discretion of the Court and having determined that there was no misconduct it is not within our province to weigh the evidence.

We find no error under the claim of misconduct.

Assignment of error 22:

**"For Error on the Part of the Court in Permitting the Taking of Pictures of the Jury and of the Court and Counsel during the Trial of said cause, in the Court Room, which pictures were later Published with a Full Page Description of the Trial in the Dayton Daily News, a newspaper of General Circulation in Darke County, Ohio, which said statement also published certain portions of alleged Letters which had not been offered or admitted in evidence at said time, and which material was improperly furnished by the Prosecuting Attorney to said newspaper, with numerous other comments on the trial, prejudicial to the substantial rights of the Defendant, which Article was read by members of the Jury."**

It probably is a debatable question how far a trial court should go in prohibiting the taking of pictures for publication in a newspaper, before the trial is terminated. The record discloses, and counsel in their brief admit, that the pictures were not taken during the time that the trial of the case was actually in progress, but at a recess or interim. The writer of this opinion has always, when acting as Common Pleas Judge, refused to permit the taking of pictures in the court room, even at recess or adjournments, before the case was concluded. We know that it is a rather general practice for the Court to permit the taking of pictures during recesses and before the case is finally determined. Probably no one can say that there is any detrimental effect in the mere taking of pictures, but this act is always a prelude to a feature article in the newspaper sponsoring the taking of pictures. The newspaper is introduced in evidence as an exhibit in support of the motion for new trial. Therein we can see the jury in the jury box, the trial court on the Bench, the state's attorneys at their trial table, the defendant's attorneys at a separate trial table, the back of the court reporter sitting at his desk and

an individual standing to the right of the jury box and identified as an investigator for the state. Separate pictures show the Darke County Court. House, three witnesses, Judge Cameron. Specific complaint is made to the fact that the article contains reference and excerpts from the letters subsequently introduced by the state as exhibits. Apparently these letters were identified and offered prior to the time of taking the picture. A feature article, including the pictures, appeared in the Dayton Daily News under date of Sunday, January 31st. The Court did not pass on the admissibility of the letters until Tuesday, February 2nd. The Court had adjourned from Saturday until Tuesday.

There is no evidence that any member of the jury read the articles appearing in the Sunday issue of the Dayton Daily News. There was evidence that three jurors saw the pictures, but none of the three read any of the printed matter. It would appear from the testimony of the jurors that there was considerable anxiety and desire to see their pictures in the newspaper. We take it that this is a rather normal reaction. Most people will turn the pages of a newspaper to see their picture when they know that it is going to be published. There is absolutely no showing that these pictures and the article in the newspaper had any injurious effect to defendant's case. The most that we can say is that it was an unfortunate incident that a situation was created through which it became possible to predicate one more claimed ground of error. The record fails to disclose that defendant's counsel made any objection to the taking of pictures. In so far as shown, they had as much information as did counsel for the state or the Court as to the purpose for taking such pictures.

We find no prejudicial error under this assignment.

We have now concluded a very full and complete discussion of every assignment of error made by counsel for the defendant. We have permitted this opinion to be unusually long due to the fact that the defendant, who, prior to this incident was held in very high esteem in his county and had been elected to the office of Probate Judge by his constituents on five different occasions. The verdict of the jury and the sentence of the Court take from this man his freedom, unless set aside for prejudicial error. It is hard to understand how a man of Judge Miles' previous good reputation and character could be guilty of an offense of this

character. Judge Wanamaker of the Supreme Court, in the case of **State v Davis, 90 Oh St 103,** lists the soliciting of a bribe by a public official as the most heinous offense in the category of crimes. We are in entire accord with Judge Wanamaker's statement. Nevertheless, we can not but have a feeling of sympathy for Judge Miles and his family. Under the record we cannot have the slightest doubt as to his guilt, and our Court in its action must be controlled by the law and not through our emotions.

Finding no prejudicial error, the judgment of the trial court will be affirmed and cause remanded for further proceedings according to law. Costs in this Court will be adjudged against the appellant.

HORNBECK and GEIGER, JJ., concur.

### APPLICATION FOR REHEARING

No. 613. Rendered January 19, 1944.

Richard E. Hole, Prosecuting Attorney, Greenville, for State of Ohio.

Wilbur D. Spidel, Greenville, for defendant-appellant.

BY THE COURT:

The above entitled cause now being determined on defendant-appellant's application for rehearing on two separately stated grounds:

"1. That the Court has improperly construed **Par. 4 of** §13442-8 GC, as it existed before and after the amendment of 1929.

2. Because the statute following the amendment was susceptible to a more narrow construction than it was prior to the amendment in that it is clear from reading the section that it is designed to give the defendant an opportunity to offer additional evidence, as well as the State of Ohio."

In connection with the application, counsel for appellant presents a short memoranda in support of the application.

We find nothing in the application or the supporting argument that was not considered and determined by us before releasing the original opinion.

The application for rehearing will be overruled.

BARNES, P. J., HORNBECK and GEIGER, JJ., concur.